. WELCOME YOUNG & another *vs.* EAGLE FIRE INSURANCE COMPANY.

An assignment under proceedings in insolvency commenced by the debtor is an alienation of his property, within the meaning of a stipulation in a mutual insurance policy, that "when any property insured by this company shall be taken possession of by a mortgagee, or in any way be alienated, the policy shall be void;" and defeats the right of a mortgagee to recover a portion stipulated by the policy to be paid to him in case of loss.

ACTION OF CONTRACT by the assignees in insolvency of Francis Worcester on a policy of insurance for $2000, made to him by a mutual insurance company, " under the conditions and limitations expressed in the by-laws" annexed to the policy, on a building owned and occupied by the plaintiff, " $1500 payable, in case of loss, to Charles Marston," who held a mortgage of that amount on the building.

The twelfth article of the by-laws provided that " when any property insured by this company shall be taken possession of by a mortgagee, or in any way be alienated, the policy shall be void; but, on application, the policy may be revived with the consent of the president expressed in writing; and in all cases of transfer of policies the alienee shall give a new deposit note if requested."

The parties agreed that Worcester, after the making of the policy, applied for the benefit of the insolvent laws to a judge of insolvency, who had and took jurisdiction of his application, and who on the 1st of June 1857 duly assigned all his property, including the building insured, to these plaintiffs; and that " there was no notice to the defendants of said assignment, or consent of the defendants asked for or given to the same, but

the defendants knew of the fact of the assignment and insolvency before the action was commenced." During the continuance of the policy, on the 12th of November 1857, the building was totally consumed by fire, and due notice and proof thereof given to the defendants.

The question whether these facts showed such an alienation of the property as avoided the policy was submitted to the decision of the court, with an agreement that the whole amount of the insurance might be recovered in this action if the defendants were liable therefor in any action by the assignees, the mortgagee, or the insolvent.

*G. Marston*, ( *W. Young* with him,) for the plaintiffs. 1. To constitute an alienation, there must be a voluntary disposal of the property. An assignment by the judge of insolvency, under the requirement of the insolvent laws, is not such an alienation; at least, until a sale and transfer by the assignees. The proceedings may be stayed or vacated, or they may be void. Parsons Merc. Law, 532, 533. 4 Kent Com. (6th ed.) 441. *Strong* v. *Manuf. Ins. Co.* 10 Pick. 40. *Smith* v. *Putnam*, 3 Pick. 320. *Burbank* v. *Rockingham Mutual Fire Ins. Co.* 4 Foster, 558. *Bragg* v. *New England Mutual Fire Ins. Co.* 5 Foster, 288.

2. If there was such an alienation by the insolvency proceedings as to affect the policy, it did not affect the interest of the mortgagee; but operated only *pro tanto*. Parsons Merc. Law, 533. *Clark* v. *New England Mutual Fire Ins. Co.* 6 Cush. 342. *Tillou* v. *Kingston Mutual Ins. Co.* 1 Selden, 405. The mortgagee, having no knowledge of the insolvency, had a right of action in his own name, and so much of the contract of insurance was distinct from the residue. *Barrett* v. *Union Mutual Fire Ins. Co.* 7 Cush. 175.

*J. G. Abbott*, for the defendants.

This case was decided in June 1860.

DEWEY, J. By the 12th article of the by-laws of this insurance company it is provided that " when any property insured by this company shall be taken possession of by a mortgagee, or in any way be alienated, the policy shall be void." The question is, whether the present case falls within that provision. It

appears that the assured, upon his voluntary application to the judge of insolvency, procured the institution of proceedings against his estate, and that the judge, by a deed of assignment in the usual form, on the 1st of June 1857, assigned all the property of the insolvent, including the property insured, to assignees. This was more than five months before the loss by fire occurred.

The question is not merely whether there was an insurable interest; nor whether in the ordinary case of insurance in a stock company, upon the principles of the common law, this policy would become void by reason of such transfer to an assignee. The rights of the plaintiffs are to be settled by reference to this policy, made by a company acting as a mutual insurance company, and accepted " under the conditions and limitations expressed in said by-laws," as is declared on the face of it.

Looking at the case in this aspect, we find in the first place the terms of the by-law as to an alienation to be very general — if the property " shall in any way be alienated." That this property was in fact alienated must be admitted. Such a deed to assignees, by the terms of the statute, " shall vest in the assignees all the property of the debtor, both real and personal, which he could by any way or means have lawfully sold, assigned or conveyed." *St.* 1838, *c.* 163, § 5. The legal estate is as effectually passed from the debtor, as if he had conveyed the same by a deed of warranty to any third person.

The only ground for maintaining any distinction is, that this was a sequestration of the property for the benefit of creditors under the provisions of the statute. As respects this policy, the difference is immaterial. The legal interest is gone; the right of possession is gone. Neither those who hold the estate, nor those for whom it is held, are members of the company, or liable to be assessed for future losses that may occur on other policies. The by-laws require that the policy be revived with the consent of the president expressed in writing; and that in all cases of transfer of policies the alienee shall give a new deposit note if requested.

In reference to policies issued by mutual insurance compa-

nies, it has been often said that they might reasonably be supposed to take into consideration the character 'of the insured. That this company deemed it important to provide for a less change in the state of the property than an extinguishment of all interest in the party insured, is quite obvious from the provision of this by-law, that " when any property insured by this company shall be taken possession of by a mortgagee, the policy shall be void." The change effected by the assignment of the judge in insolvency is much greater than such a change of possession, which, as we see, was made by the by-laws a cause of avoiding the policy. All the evils which would result from an entry by a mortgagee to foreclose exist in this case. The possible interest in the estate, on the part of the insolvent debtor, is far less than that of a mortgagee after entry for foreclosure. Confining the decision to the case here presented, the court are of opinion that this policy was rendered void by the proceedings in insolvency and transfer of the property to an assignee.

A similar view of the effect of proceedings in bankruptcy, under the U. S. St. of 1841, Sess. 1, *c.* 9, § 3, was taken by the supreme court of Maine in the case of *Adams* v. *Rockingham Mutual Fire Ins. Co.* 29 Maine, 292.

The provision that fifteen hundred dollars of the amount insured should be " payable, in case of loss, to Charles Marston," who was a mortgagee of the premises, does not change the result. The policy was not on his interest as mortgagee, but a policy in favor of the mortgagor and on his interest; and any forfeiture, by reason of a breach of the by-laws, that would defeat the policy as respects Worcester, the party for whom the policy was made, is equally fatal to Marston, whose rights merely attach to a legal claim for a loss arising upon the interest of Worcester. *Loring* v. *Manufacturers' Ins. Co.* 8 Gray, 28.

*Judgment for the defendants.*